IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DEXTER A. CHAMBLISS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO. 3:10-CV-213-WKW |
| v. | ) |
| | ) |
| COMMISSIONER NANCY T. BUCKNER, *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' motion for an order staying discovery.[1] (Doc. # 40.) Defendants request a stay of all further discovery until the court rules on Defendants' summary judgment motions raising qualified immunity and/or Eleventh Amendment immunity as a bar to Plaintiff's 42 U.S.C. § 1983 claims. For the reasons to follow, the motion is due to be granted.

**I. BACKGROUND**

The record details are sparse, but the material facts are clear. Plaintiff Dexter A. Chambliss fathered a child. In November 2004, paternity having been adjudicated, the District Court of Tallapoosa County, Alabama, ordered Mr. Chambliss to pay $192 per month for the support of his minor child, and retroactive child support in the amount of $3,456. (Order Establishing Paternity & Setting Amount of Child Support (Attach. 1 to

---

[1] The motion is contained in Defendants' response to Plaintiff's motion to compel. (Doc. # 40.) By separate Order, the motion to compel (Doc. # 35) is denied without prejudice, with leave to re-file, if and when appropriate.

Armour Aff.).)  At that time, Mr. Chambliss was employed by Temp Force, and an income withholding order was issued to his employer.  (Pl. Income Statement & Order to Withhold Income for Child Support (Attachs. 2 & 3 to Armour Aff. (Doc. # 30)).)

By May 2005, it was plain that Mr. Chambliss had abdicated his court-ordered financial responsibilities, as he was $4,800 in arrears on his child support payments and owed $236.16 in interest on the principal amount.  At this point, the Alabama Department of Human Resources ("ADHR") intervened.[2]  On behalf of the child's mother, the ADHR filed a Contempt Petition for Non-Payment of Child Support in the District Court of Tallapoosa County, Alabama.  The petition requested a hearing for a determination that Mr. Chambliss was in contempt of court, a judgment on the arrearage, and the entry of an income withholding order.  (Contempt Petition for Non-Payment of Child Support (Attach. 4 to Armour Aff.).)  A contempt hearing, among other things, permits ADHR "to discover any assets or income from which child support may be paid," as well as gives a non-custodial parent an opportunity to ask for "relief or guidance from the court based upon [his or her] particular circumstances."  (Wallace Aff. 3 (Ex. D to Doc. # 39).)  "Neither federal law nor [A]DHR policy include[s] verified knowledge of an income source as a criteria to refer a case

---

[2] As explained by Ms. Wallace,

> Title IV-D of the Social Security Act, federal regulations and [A]DHR policy require [A]DHR to monitor child support obligations, to identify cases in which one month's child support obligation is 30 days past due, to send an income withholding order if it can identify an employer, or use other enforcement actions, including court action, within specified time frames of determining the child support is 30 days past due.

(Wallace Aff. 2.)

to court for contempt or other enforcement action." (Wallace Aff. 2.) Mr. Chambliss nonetheless repeatedly notified Tallapoosa County DHR employees that he was "disabled" and that his "only source of income" was Supplemental Security Income ("SSI"). (Pl. Aff. ¶ 3 (Attach. to Compl. (Doc. # 1)).)

Notwithstanding his protests, Mr. Chambliss had to appear numerous times before the state district court for compliance hearings at which "Tallapoosa County [DHR] and its employees . . . requested that [he] be arrested for failure to pay child support from [his] SSI monies." (Pl. Aff. ¶ 4.) In February 2010, almost five years after the petition for contempt was filed, the District Court of Tallapoosa County dismissed the petition, reciting that Mr. Chambliss's "only source of income is SSI" benefits.[3] (District Ct. Order (Attach. 5 to Armour Aff.).)

The next month, in March 2010, Mr. Chambliss filed this action against Nancy T. Buckner, ADHR's commissioner; Marsha Hanks, the director of the Tallapoosa County Department of Human Resources ("Tallapoosa County DHR"); and the Tallapoosa County DHR. On July 2, 2010, with leave of court, Mr. Chambliss filed an Amended Complaint, dropping the Tallapoosa County DHR as a defendant,[4] but adding four additional individual

---

[3] Neither the date Mr. Chambliss began to receive SSI benefits nor the duration of Mr. Chambliss's prior employment is in the record.

[4] "As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006)).

ADHR employees, who were involved either directly as participants in Mr. Chambliss's state district court proceedings, or indirectly as supervisors. Those Defendants are: Uvonika Armour, a Tallapoosa County DHR financial support worker and the caseworker assigned to Mr. Chambliss's child support case beginning in 2005; Brenda Floyd, a Tallapoosa County DHR supervisor for the child support enforcement division; Kay Wallace, program specialist for ADHR's child support enforcement division; and Jan Justice, ADHR's program manager. (*See* Am. Compl. 1; Affs. of Armour, Floyd, Wallace & Justice (Exs. to Docs. # 30, 39).) In the Amended Complaint, all Defendants are sued only in their individual capacities.

It is undisputed that SSI benefits are not subject to garnishment or to income withholding for payment of child support, pursuant to 42 U.S.C. §§ 407(a) and 1383(d)(1). Section 407(a), the Social Security Act's "anti-attachment" provision, protects SSI benefits from "execution, levy, attachment, garnishment, or other legal process." Section 1383(d)(1) applies § 407(a) to Title XVI of the Social Security Act, which is the SSI scheme of benefits for specified individuals whose income and assets fall below delineated levels.

Mr. Chambliss argues that the fact that his only source of income is SSI benefits was readily ascertainable through ADHR's state-of-the-art computer system, the Alabama Location Enforcement Collection System ("ALECS"), and that Defendants – at the very least his caseworker and her supervisor – had actual notice of this fact. (Pl. Mot. to Compel 4-5; Am. Compl. ¶¶ 13, 14, 16.) At the heart of this case are Mr. Chambliss's allegations that, because Defendants knew that seeking an income withholding order would violate the anti-attachment provision, they attempted to circumvent the anti-attachment provision by

4

obtaining an order from the state district court requiring Mr. Chambliss to pay child support payments out of his SSI benefits. (Am. Compl. ¶¶ 17, 18.) There also are allegations, but no evidence, that Ms. Armour repeatedly requested the District Court of Tallapoosa County to order Mr. Chambliss to pay child support from his SSI benefits, and that Ms. Armour asked that case status reviews and compliance hearings correspond with the dates of disbursement of his SSI benefits.[5] (Am. Compl. ¶¶ 8-9.)

As alleged by Mr. Chambliss, Ms. Armour's actions constituted a misuse of state legal proceedings to collect his SSI benefits for payment of delinquent child support, in "flagrant violation" of §§ 407(a) and 1383(d)(1). (Am. Compl. ¶¶ 10, 24.) Mr. Chambliss further contends that the other Defendants violated the anti-attachment provision by failing to supervise Ms. Armour and/or by having in place an official policy or custom that resulted in the alleged federal statutory violations. (Am. Compl. ¶¶ 20, 24, 26, 31, 33, 38, 42.) In addition to asserting federal statutory violations, Mr. Chambliss alleges, in the most vague terms, a violation of the Due Process Clause of the Fourteenth Amendment.[6] (Am. Compl.

---

[5] In an uncontested affidavit, Ms. Armour denies these allegations:

> It is the trial court that determines the amount of child support a person pays based on guidelines as determined by state law, enters any order, finds a person in contempt, orders incarceration and sets any court dates for future reviews or court action . . . ; any deviation is strictly at the discretion of the trial court. Neither I nor the Tallapoosa County [DHR] make or control those decisions.

(Armour Aff. 2; *see also* Hanks Aff. 2 ("Each year court dates for child support hearings are scheduled in advance by the Court for the entire year.") (Doc. # 30).)

[6] Although the due process theory is essentially unintelligible, at best, its viability appears to be dependent upon there first being a violation of a federal statute.

5

¶ 12.) The Amended Complaint seeks compensatory and punitive damages, costs and attorney's fees. (Am. Compl. 17 ("Prayer of Relief").) Declaratory or injunctive relief is not sought.

All Defendants have moved for summary judgment. On July 12, 2010, Ms. Buckner and Ms. Hanks filed a motion for summary judgment, accompanied by a brief and an evidentiary submission. (Docs. # 28-30.) Also, on October 22, 2010, the remaining Defendants filed a motion for summary judgment, a brief and an evidentiary submission. (Docs. # 37-39.) The summary judgment motions rest on the same grounds: mootness, qualified immunity, and Eleventh Amendment immunity. Mr. Chambliss did not respond to the July 12 summary judgment motion, as required by the General Briefing Order. (Doc. # 17.) Thus, that motion is under submission with no response from Mr. Chambliss. The deadline for Mr. Chambliss to respond to the October 22 summary judgment motion, however, has not yet passed under the General Briefing Order.

Also, on October 21, 2010, Mr. Chambliss filed a motion to compel production of documents. (Doc. # 35.) As grounds for his motion, Mr. Chambliss contends that "it is most important that [he] be able to access documents from [the ALECS]," but that "Defendants have refused to produce screen events on ALECS that would show notices Defendants received pertaining to [Mr. Chambliss's] financial status." (Pl. Mot. to Compel 4.) These notices, according to Mr. Chambliss, would prove Defendants' actual or constructive knowledge that he "did not have any other source of income or assets" other than SSI benefits, and, thus, the notices are essential to proving Defendants' "state of mind." (Pl. Mot.

6

to Compel 4-5.)  Without these discovery documents, Mr. Chambliss asserts that he "would be deprived of his ability to prove his federal claims."  (Pl. Mot. to Compel 1.)

In response to the motion to compel, Defendants urge against disclosure on the ground that, by federal regulation and state statute, ADHR is required to keep ALECS documents pertaining to "child support enforcement" confidential. (Defs. Mot. to Stay 1-3.) Defendants also argue that they are "entitled" to a resolution of Eleventh Amendment and qualified immunity claims, as presented in their summary judgment motions, "prior to being required to release information that is confidential under federal and state law."  (Defs. Mot. to Stay 3.)  Hence, they move for a stay of all further discovery pending a ruling on the immunity issues.  (Defs. Mot. to Stay 7.)

## II.  DISCUSSION

The issue is whether the court should stay all further discovery pending the disposition of the qualified immunity defense as to the claims for money damages against Defendants in their individual capacities.[7]  "The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages" unless they have violated a clearly established constitutional or statutory right. *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1157 (11th Cir. 2010) (citation and internal quotation marks omitted).  A qualified immunity determination requires evaluation of a

---

[7] Defendants also contend that any 42 U.S.C. § 1983 cause of action against them in their official capacities is barred by the Eleventh Amendment.  The Amended Complaint expressly seeks relief against all Defendants only in their individual capacities.  Because there are no official capacity claims alleged, only qualified immunity is at issue.

multi-part test. First, a defendant must establish that he or she was acting within his or her discretionary authority as a public employee when the conduct in question occurred. *Id.* at 1158. Second, a plaintiff must demonstrate "'that: (1) the defendant violated a constitutional [or statutory] right, and (2) this right was clearly established at the time of the alleged violation.'" *Id.* (quoting *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)).

Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (citation and internal quotation marks omitted). It "seeks to protect government officials from the cost of trial and the burdens of broad reaching discovery." *Caraballo-Sandoval v. Honsted*, 35 F.3d 521, 524 (11th Cir. 1994); *see also Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004) ("The defense of . . . qualified immunity protects government officials not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial discovery."). Hence, "subjecting officials to traditional discovery concerning acts for which they are likely immune would undercut the protection immunity was meant to afford." *Redford v. Gwinnett Cnty. Judicial Circuit*, 350 F. App'x 341, 346 (11th Cir. 2009). Thus, where qualified immunity is raised as a defense, a court has discretion to "resolve the issue of qualified immunity before allowing discovery." *Caraballo-Sandoval*, 35 F.3d at 524; *see generally Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir.1990) ("Matters pertaining to discovery are committed to the sound discretion of the district court . . . .").

Defendants have raised substantial arguments that they likely are entitled to qualified immunity on summary judgment on grounds that the material undisputed facts do not make out a federal statutory violation at all and do not violate clearly established law.[8] Mr. Chambliss faces a formidable hurdle given that a substantially identical claim on similar facts was rejected in *Burns v. Buckner*, No. 3:09cv858-WKW (M.D. Ala. May 18, 2010) (summary judgment opinion).[9] In *Burns*, this court found that nothing in § 407(a) – which protects SSI benefits from "execution, levy, attachment, garnishment, or other legal process" – exempted an individual whose only income was SSI benefits from having to attend state court hearings for failure to pay child support. *Id.* at 13. "An order to *attend* a proceeding is not equivalent to an order requiring [the plaintiff] to pay his child support obligations out of his SSI benefits." *Id.* Such an order is not a judicial mechanism "'by which control over property passes from one person to another' in satisfaction of an unpaid debt" and, thus, is not "other legal process." *Id.* (quoting *Wash. State Dep't of Soc. & Health Serv. v. Keffeler*, 537 U.S. 371, 383 (2003)).

Here, there is evidence that Mr. Chambliss was required to attend multiple hearings in the state district court pertaining to his failure to pay child support. There is, however, no evidence that at those hearings, any Defendant was able to persuade the state district court to order that funds from Mr. Chambliss's SSI check be withheld to satisfy his court-ordered

---

[8] It is notable that the arguments for qualified immunity presented in Defendants' summary judgment motion filed in July 2010 stand unrebutted.

[9] Mr. Chambliss's counsel is presumed to have familiarity with this case, as he also represented the plaintiff in *Burns*.

child support obligations.  Indeed, Mr. Chambliss has not taken a position at any time during this lawsuit – either in the complaint or other filings – that such an order actually was entered, or that any Defendant, through the legal system, gained control of his SSI benefits. To the contrary, the evidence is that, ultimately, the state district court dismissed the petition for contempt for the very reason that Mr. Chambliss's sole source of income was SSI benefits.  (District Ct. Order (Attach. 5 to Armour Aff.).)  Mr. Chambliss has failed to demonstrate that information pertaining to the individual Defendants' knowledge of the sole source of his income is material to the qualified immunity inquiry, that such information would defeat Defendants' assertion of qualified immunity on his § 1983 claims, or that other facts could be developed during discovery that would preclude application of the defense. From aught that appears, the record contains all the material facts necessary to apply the law of qualified immunity.

      On this record, a stay of discovery is warranted until the immunity issue is resolved. A stay will protect the interests of Defendants, while not precluding later discovery should Mr. Chambliss's claims survive summary judgment.

## III.  CONCLUSION

For the foregoing reasons, Defendants' motion to stay (Doc. # 40) is GRANTED. Discovery is STAYED pending resolution of the qualified immunity defense raised in the pending summary judgment motions.  If all or parts of the summary judgment motions are denied, the court will thereafter lift the stay and allow additional time for the completion of discovery.

DONE this 3rd day of November, 2010.

                                                    /s/ W.  Keith Watkins
                                     UNITED STATES DISTRICT JUDGE