IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DEXTER A. CHAMBLISS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 3:10-CV-213-WKW [WO] |
| v. | ) | |
| | ) | |
| COMMISSIONER NANCY T. | ) | |
| BUCKNER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In this 42 U.S.C. § 1983 action, Plaintiff Dexter A. Chambliss ("Chambliss") alleges that five employees of the Alabama Department of Human Resources ("ADHR") and its commissioner initiated and prosecuted a contempt petition against him to collect delinquent child support obligations from his Social Security Income benefits, in violation of the anti-attachment provision of the Social Security Act, 42 U.S.C. §§ 407(a), 1383(d)(1).  Mr. Chambliss seeks to recover monetary damages from Defendants in their individual capacities, who are:  (1) Nancy Buckner, ADHR's commissioner; (2) Marsha Hanks, the director of the Tallapoosa County Department of Human Resources ("Tallapoosa County DHR"); (3) Uvonika Armour, a Tallapoosa County DHR financial support worker; (4) Brenda Floyd, a Tallapoosa County DHR supervisor for the child support enforcement division; (5) Kay Wallace, program specialist for ADHR's child support enforcement division; and (6) Jan Justice, ADHR's program manager.

Between them, Defendants have filed two summary judgment motions (Docs. # 28, 37), which are accompanied by briefs and evidentiary submissions (Docs. # 29-30, 38-39). Mr. Chambliss did not respond to the summary judgment motion jointly filed by Nancy Buckner and Marsha Hanks (Doc. # 28), but he did respond in opposition to the other (Doc. # 44 (responding to Doc. # 37)), and Defendants Uvonkia Armour, Brenda Floyd, Kay Wallace and Jan Justice replied (Doc. # 45).  After careful consideration of the arguments of counsel, the record, and the applicable law, the court finds that the motions are due to be granted.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citing Fed. R. Civ. P. 56(a)).  On summary judgment, the evidence and the inferences from that evidence must be viewed in the light most favorable to the non-movant.  *See Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).  Hence, "'facts,

2

as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the non-moving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also* Fed. R. Civ. P. 56(c). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

Finally, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d

1099, 1101 (11th Cir. 2004).  The court, however, "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Id.*

### III.  BACKGROUND

At all times material to this litigation, Mr. Chambliss was subject to a child support order entered by the District Court of Tallapoosa County, Alabama.  That order, entered in October 2004, required Mr. Chambliss to pay $192 per month for the support of his minor child, and to pay $34.56 per month for retroactive child support totaling $3,456, with payments commencing in November 2004.  (Order Establishing Paternity & Setting Amount of Child Support (Attach. 1 to Armour Aff. (Doc. # 30)).)  At that time, Mr. Chambliss was employed by Temp Force, and an income withholding order was issued to his employer.  (Pl. Income Statement & Order to Withhold Income for Child Support (Attachs. 2 & 3 to Armour Aff.).)

Mr. Chambliss quickly fell in arrears on his court-ordered child support obligations.  By May 2005, he was $4,800 in arrears on his child support payments and owed $236.16 in interest on the principal amount.  At this point, the ADHR intervened, a Contempt Petition was filed, and, thus, Mr. Chambliss's troubles with the ADHR began.  (Contempt Petition for Non-Payment of Child Support ("Contempt Petition") (Attach. 4 to Armour Aff.).)

The ADHR operates the state's child support programs, as required under the provisions of Title IV-D of the Social Security Act, 42 U.S.C. §§ 651-669b, and as

5

designated by the Alabama Child Support Act of 1979, Ala. Code §§ 38-10-1 to 38-10-12. The ADHR's responsibilities include "locating absent parents, establishing paternity, establishing or modifying support orders, enforcing support obligations and related matters," and "administer[ing] income withholding." Ala. Code § 38-10-3. One method the ADHR employs to enforce child support orders is the referral of a case to a Title IV-D ADHR attorney for a contempt action in state district court.

The ADHR has adopted a Child Support Policy and Procedures Manual, which contains a section outlining the criteria that must be met before ADHR can refer a case for a contempt action.[1] These are the criteria, verbatim:

1. There is a court order for child support and/or medical support.

2. The NCP [non-custodial parent] is not paying according to the order and is at least one month in arrears; or

3. The NCP is not providing medical support as ordered; and

4. The NCP's location is known but his/her periodic income source cannot be verified.

(Child Support Policy & Procedures Manual 9-19 (Attach. 1 to Wallace Aff.).)

---

[1] As explained by Ms. Wallace,

Title IV-D of the Social Security Act, federal regulations and [A]DHR policy require [A]DHR to monitor child support obligations, to identify cases in which one month's child support obligation is 30 days past due, to send an income withholding order if it can identify an employer, or use other enforcement actions, including court action, within specified time frames of determining the child support is 30 days past due.

(Wallace Aff. 2.)

It is undisputed that Mr. Chambliss was under a court order for payment of child support (criteria 1) and was more than a month in arrears on his child support payments when the Contempt Petition was filed (criteria 2).  It also can be presumed that Mr. Chambliss's location was known, based upon evidence documenting his appearances in state district court (first part of criteria 4).  Whether Mr. Chambliss's periodic income source was or could have been verified prior to the referral for the contempt action (second part of criteria 4) is a point of contention, but, as will be explained later in this opinion, ultimately proves immaterial. It is noted, that the record contains no specifics as to the income verification process used by the ADHR in Mr. Chambliss's case, or who with the ADHR was involved in that process. In general terms, Ms. Buckner, Ms. Hanks, Ms. Wallace and Ms. Justice attest that they had "no knowledge" that Mr. Chambliss's "only source of income [was] Supplemental Security Insurance benefits" and/or that they had "no knowledge" at all of his case.  (Buckner Aff. 1-2; Hanks Aff. 1-2; Wallace Aff. 4-5; Justice Aff. 2.)  Ms. Armour and Ms. Floyd add that they did not "use[] the state legal process to circumvent and usurp the Congress' SSI exemption."  (Armour Aff. 3; Floyd Aff. 3.)

Regardless of the lack of evidence of the verification process, it is undisputed that Mr. Chambliss's case was referred for a contempt action.  On May 13, 2005, a Contempt Petition for Non-Payment of Child Support was filed against Mr. Chambliss in the District Court of Tallapoosa County.  The Contempt Petition delineates the amount of arrearage and interest owed by Mr. Chambliss, and requests a hearing requiring Mr. Chambliss "to show cause why

he should not be held in contempt of court," a judgment on the arrearage, and the entry of an income withholding order.[2]   (Contempt Petition 1.)   The Contempt Petition is signed by Vickie S. Martin, in her capacity as deputy district attorney of the child support prosecution division in Dadeville, Alabama.[3]   (Contempt Petition 2.)

As to Mr. Chambliss's income source at the time the Contempt Petition was filed in 2005, the record contains no evidence whether Mr. Chambliss was employed or whether by this time, he was receiving SSI benefits and, if so, whether he had any additional sources of income.[4]   Based upon documentation from the Social Security Administration submitted by Mr. Chambliss, there is evidence that for the years 2006, 2007, 2008 and 2009, Mr. Chambliss received SSI benefits.[5]   (Social Security Admin. Statements (Ex. 4 to Pl. Summ. J. Resp.).)   That evidence is silent, however, as to whether he received SSI benefits in 2005,

---

[2] A contempt hearing, among other things, permits ADHR "to discover any assets or income from which child support may be paid," as well as gives a non-custodial parent an opportunity to ask for "relief or guidance from the court based upon [his or her] particular circumstances."  (Wallace Aff. 3 (Ex. D to Doc. # 39).)

[3] As discussed later in this opinion, while Mr. Chambliss tries to implicate Ms. Martin in a conspiracy with Ms. Armour and Ms. Floyd to seize his SSI benefits, Ms. Martin is not a defendant in this action, and, furthermore, a conspiracy claim is not alleged in the Amended Complaint.

[4] When the child support order was entered in October 2004, there is evidence that Mr. Chambliss was employed with Temp Force and that an income withholding order was issued to his employer.  (Pl. Income Statement & Order to Withhold Income for Child Support.)  When that employment ended is not answered in the record.

[5] Viewing the evidence in the light most favorable to Mr. Chambliss, it is presumed that he received SSI benefits under 42 U.S.C. § 1382 because of his own disability.  (See Pet. to Modify Child Support (Ex. 4 to Pl. Summ. J. Resp.).)  The SSI program provides subsistence benefits to eligible disabled individuals.  42 U.S.C. § 1381a.  If the potential recipient has other sources of earned or unearned income, the SSI benefits are paid as a supplement to bring the individual's monthly income up to the statutorily defined amount.  See 42 U.S.C. §§ 1382, 1382a.

the year the Contempt Petition was filed.  (Social Security Admin. Statements.)  While Mr. Chambliss filed his own affidavit, dated February 23, 2010, attesting that he is "*currently disabled and receive[s] SSI benefits as [his] only source of income*" (Pl. Aff. ¶ 3 (Ex. to Compl. (emphasis added)), that affidavit does not delineate the date he first received SSI benefits or provide any information as to when SSI benefits became his "only source of income."

Piecing together other parts of the factual puzzle also is challenging on the sparse record.[6]  There is no evidence as to when the initial hearing on the Contempt Petition was held, but there is some evidence indicating that each month during the pendency of the Contempt Petition, Mr. Chambliss was summoned to "child support court." (Pl. Dep. 96, 102 (Ex. 1 to Doc. # 44).)  There also is some evidence as to what occurred when Mr. Chambliss appeared for "child support court."  That evidence follows.

Monthly child support hearings are scheduled by the state district judge in advance for the calendar year.  (Hanks Aff. 2.)  Every month, on the scheduled day, Mr. Chambliss went to the Tallapoosa County District Courthouse for "child support court." (Pl. Dep. 102; *see also* Notices of Compliance (Ex. 4 to Doc. # 44).)  When he was able to pay, he paid $75

---

[6] In particular, in his summary judgment response, Mr. Chambliss's Statement of Facts rests solely on the allegations in his unsworn Amended Complaint.  (Pl. Summ. J. Resp. 1-5.)  Allegations in an unsworn complaint are not evidence for purposes of summary judgment and, thus, cannot be considered.  *See Celotex*, 477 U.S. at 324.  However, interspersed in the Discussion section of his summary judgment response are citations to evidence, including attached deposition excerpts.  While that evidence does not in material respects support his *allegations*, the evidence has been considered.

in cash, which he obtained from his SSI check.[7]  (Pl. Dep. 7-8.)  Ms. Floyd, who was seated at a desk in the courtroom, collected his cash payments and issued receipts.  (Pl. Dep. 8, 79-80; *see also* Floyd Aff. 1-2 (explaining that as part of her job, she "regularly attend[s] [child support] court at which time [her] primary duty is to take money, count it and give a receipt to the person who paid the money").)  Sometimes after he paid, Mr. Chambliss "had to talk to Ms. Martin," and he told her that "SSI was [his] only source of income."  (Pl. Dep. 81.)  Ms. Armour and Ms. Floyd were present during some of these conversations between Mr. Chambliss and Ms. Martin.  (Pl. Dep. 82-83, 87-88.)  If he paid his monthly child support, he was "free to leave" until the next scheduled court date, without appearing before the state district judge.  (Pl. Dep. 80; *see also* Pl. Dep. 10.)

On three occasions, Mr. Chambliss did not pay his child support on the scheduled court date; thus, he was required to attend hearings before the state district judge.  (Pl. Dep. 15, 80, 82.)  As Mr. Chambliss's case worker, Ms. Armour was required by ADHR policy to attend his hearings.  (Armour Aff. 1; Wallace Aff. 3.)  During these hearings, she informed the state district judge that Mr. Chambliss "was on SSI," as had been reported to her by Mr. Chambliss (Pl. Dep. 83, 87-88, 91).  According to Mr. Chambliss, both he and Ms. Armour showed the state district judge Mr. Chambliss's paperwork detailing his receipt of SSI benefits.  (Pl. Dep. 84, 99.)  No evidence of other income was adduced at these hearings.  (Pl. Dep. 84.)

---

[7] The record does not reflect when the monthly payments decreased from $192, as originally ordered, to $75.

10

Notwithstanding Mr. Chambliss's receipt of SSI benefits, on one occasion, the state district judge put him in handcuffs and detained him in the courtroom for "about an hour," until Mr. Chambliss contacted his mother, who came to the courtroom and paid the child support.  (Pl. Dep. 11, 14, 92.)  The other two times when Mr. Chambliss did not pay his child support, the state district judge allowed him to defer payment until "the next time [he] got [his] check." (Pl. Dep. 15.)  Moreover, at one of the hearings, Ms. Martin asked the district judge to order Mr. Chambliss to pay his child support with his SSI benefits, and no one with ADHR interjected any opposition.[8] (Pl. Dep. 91.)

These monthly court proceedings continued presumably until February 25, 2010.  On February 25, 2010, almost five years after the Contempt Petition was filed, an order was entered by the District Court of Tallapoosa County dismissing the Contempt Petition, reciting that Mr. Chambliss's "only source of income is SSI" benefits.  (District Ct. Order (Attach. 5 to Armour Aff.).)  There is no evidence in the record delineating how or when the state district judge reached this conclusion.

After the Contempt Petition was dismissed, on March 9, 2010, Mr. Chambliss filed this action against Ms. Buckner, Ms. Hanks, and the Tallapoosa County DHR.  On July 2, 2010, with leave of court, Mr. Chambliss filed an Amended Complaint, dropping the Tallapoosa County DHR as a defendant, but adding Ms. Armour, Ms. Floyd, Ms. Wallace and Ms. Justice.  (*See* Am. Compl. 1 (Doc. # 21); Affs. of Armour, Floyd, Wallace & Justice

---

[8] There is no indication whether a transcript or other recording of the hearings before the state district judge exists.

(Exs. to Docs. # 30, 39).)  In the Amended Complaint, all Defendants are sued only in their individual capacities and only for monetary damages.

## IV.  DISCUSSION

Mr. Chambliss alleges that Defendants initiated and prosecuted the Contempt Petition to obtain his SSI benefits for the payment of owed child support, in violation of 42 U.S.C. § 407(a).  Mr. Chambliss brings his § 407(a) claims against Defendants, in their individual capacities, pursuant to § 1983.  The summary judgment motions rest on the same grounds: mootness, qualified immunity, and Eleventh Amendment immunity.  Qualified immunity ultimately is dispositive.

### A.    **Mootness**

Because the Contempt Petition against Mr. Chambliss was dismissed prior to the commencement of this lawsuit, Defendants argue that the lawsuit is moot and that no exception to the mootness doctrine applies.  "'[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  The mootness doctrine operates differently, however, depending upon whether equitable or monetary relief is at stake.  "Equitable relief is a prospective remedy, intended to prevent future injuries."  *Id.*  "When the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury."  *Id.*  "Unlike declaratory and injunctive relief, . . . awards for

12

monetary damages compensate the claimant for alleged past wrongs." *McKinnon v. Talladega Cnty., Ala.*, 745 F.2d 1360, 1362 (11th Cir. 1984). And, "[a] claim for damages does not expire upon the termination of the wrongful conduct." *Id.*; *see also* 13C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 3d § 3533.3 (3d ed. 2008) ("Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable.").

It is true that the original Complaint sought injunctive and declaratory relief. However, when Mr. Chambliss amended his complaint, he omitted all claims seeking equitable relief.[9]  Based upon *Adler* and *McKinnon*, the dismissal of the Contempt Petition does not moot Mr. Chambliss's claims for monetary damages.  Accordingly, Defendants are not entitled to summary judgment based upon their assertion of mootness.

## B.   <u>Eleventh Amendment Immunity</u>

Defendants also contend that any § 1983 cause of action against them in their official capacities is barred by the Eleventh Amendment.  The Amended Complaint expressly seeks relief against all Defendants only in their individual capacities.  Because only individual capacity claims are alleged, Eleventh Amendment immunity is not at stake.  *Lundgren v. McDaniel*, 814 F.2d 600, 603 (11th Cir. 1987) ("The eleventh amendment does not bar an

---

[9] "As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'"  *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006)).

award of damages against a defendant in his personal capacity.").  Rather, only qualified immunity is at issue.

**C.    Qualified Immunity**

All Defendants contend that they are immune from suit for money damages in their individual capacities under the doctrine of qualified immunity.

Qualified immunity protects government officials performing discretionary functions from liability for civil damages, so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818  (1982).  Before inquiring into the particular federal statutory or constitutional rights at issue, the court must determine whether the officials have met their burden of establishing that "'[they were] acting within the scope of [their] discretionary authority when the allegedly wrongful acts occurred.'"  *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).  This inquiry requires a determination of whether the acts in question "are of a type that fell within the [defendant's] job responsibilities."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  The proper inquiry is twofold: (1) whether the government employee was "performing a legitimate job-related function (that is, pursuing a job-related goal)" and (2) whether the government employee, in pursuit of this legitimate job-related function, used "means that were within his power to utilize."  *Id.*

14

If the ADHR officials were acting within their discretionary authority, the burden shifts to Mr. Chambliss to show that Defendants are not entitled to qualified immunity. *Id.* at 1264.  To meet his burden, Mr. Chambliss must satisfy the test laid out below.

In *Saucier v. Katz*, 533 U.S. 194 (2001), the United States Supreme Court held that the threshold question in qualified immunity cases is whether the facts, taken in the light most favorable to the plaintiff, show the violation of a federal statutory or constitutional right. *Id.* at 201.  Then, but only "if a violation could be made out," the court determines whether the right at issue was "clearly established" at the time of the violation. *Id.*  On reconsidering this stringent two-step process, the Supreme Court in *Pearson v. Callahan* concluded that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory."  129 S. Ct. 808, 818 (2009).  Instead, judges "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* The court proceeds in the usual order in this case.

### 1.    *Discretionary Authority*

Ms. Buckner, as the commissioner of the ADHR, and Ms. Hanks, Ms. Armour, Ms. Floyd, Ms. Wallace and Ms. Justice, as employees of a state department, were government officials at the time of the alleged actions.  Mr. Chambliss has not challenged Defendants' contentions, supported by evidence, that they were acting within their discretionary authority

when the alleged violation of a federal statutory right occurred, and the evidence supports a finding that they were.

### 2.   *Violation of a Federal Statutory Right*[10]

Section 1983 provides a remedy for "the violation of a federal *right*, not merely a violation of federal *law*."[11] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). "[T]o maintain a § 1983 cause of action for a violation of § 407(a), [Mr. Chambliss] 'must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs.'" *London v. RBS Citizens, N.A.*, 600 F.3d 742, 745 n.1 (7th Cir. 2010) (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005)). "If shown, there is a rebuttable presumption that the right may be enforced under § 1983." *Id.* Neither party addresses whether § 407(a) creates a private right of action that Mr. Chambliss may enforce under § 1983. This issue need not be addressed, however, because Mr. Chambliss fails to raise a genuine issue of material fact that any Defendant violated § 407(a). *See London*, 600 F.3d at 745 n.1 (assuming, without deciding, that § 407(a) "creates a private right that the [plaintiffs] may enforce under § 1983," and affirming judgment dismissing the § 1983 complaint for failure to state a claim).

---

[10] The Amended Complaint also contains vague references to violations of the Due Process Clause of the Fourteenth Amendment. (Am. Compl. ¶¶ 12, 23, 29.) Because a violation of a constitutional right separate from the alleged violations of federal statutory rights has not been argued, and cannot be independently ascertained on this record, any constitutional claim fails for the reason that, at best, its viability is dependent upon there first being a violation of a federal statutory right.

[11] "42 U.S.C. § 1983 provides no substantive rights, only a remedy." *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 n.3 (5th Cir. 1983).

16

a.    **42 U.S.C. § 407(a) – Generally**

The statute at issue – § 407(a) of the Social Security Act – prohibits any person, including a state acting pursuant to its own procedures, from using "execution, levy, attachment, garnishment, or other legal process" to seize SSI monies.  § 407(a); *see generally Gean v. Hattaway*, 330 F.3d 758, 768 (6th Cir. 2003).  Specifically, § 407(a) states: "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process . . . ."  Section 407(a) is often referred to as the "anti-attachment" provision. *See Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 379 (2003).  Section 1383(d)(1) applies § 407(a) to Title XVI of the Social Security Act, which comprises the SSI scheme of benefits for specified individuals whose earnings fall below delineated levels.  The purpose of § 407(a) is to "insure that recipients have the resources necessary to meet their most basic needs." *United States v. Devall*, 704 F.2d 1513, 1516-17 (11th Cir. 1983).  In this case, Mr. Chambliss seeks a remedy under § 1983 for a violation of § 407(a).

Mr. Chambliss alleges that Defendants violated the anti-attachment provision by their personal participation in the initiation and five-year prosecution of the state district court proceedings and/or by failing to properly supervise those Defendants assigned to the proceedings.  He further alleges that Defendants knew or should have known that SSI

17

benefits were his sole source of income and that the initiation and five-year continuation of contempt proceedings constitute "other legal process" under § 407(a).  In other words, Mr. Chambliss contends that rather than seek an income withholding order (which would clearly violate the anti-attachment provision),[12] Defendants attempted to do an end-run around the anti-attachment provision by initiating the contempt proceedings in order to reach his SSI benefits through a court order requiring Mr. Chambliss to pay child support payments out of his SSI benefits.

The Supreme Court addressed § 407(a) in (1) *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973); (2) *Bennett v. Arkansas*, 485 U.S. 395 (1988) (*per curiam*); and (3) *Keffeler*, 537 U.S. at 371.  In *Philpott*, the state of New Jersey filed a lawsuit requesting the seizure of a Social Security recipient's lump-sum payment of retroactive disability benefits that had been deposited into a bank account.  The Supreme Court held that "[o]n its face" § 407(a) barred the state "from reaching the federal disability payments."  409 U.S. at 415.

*Bennett* involved an Arkansas statute that authorized the state to seize a prisoner's estate "to help defray the cost of maintaining its prison system."  485 U.S. at 396.  The statute defined "estate" to include federal social security benefits.  *Id.*  Acting pursuant to that statute, the state of Arkansas filed lawsuits in state court seeking to attach federal social

---

[12] The evidence establishes that an income withholding order was issued to Temp Force when it employed Mr. Chambliss.  (Pl. Income Statement & Order to Withhold Income for Child Support.)  It is undisputed that an income withholding order was not issued, for example, to the Social Security Administration for the attachment of Mr. Chambliss's SSI benefits.

18

security benefits paid to state inmates. *Id.* The Supreme Court of the United States held that the Arkansas statute violated the Supremacy Clause of the U.S. Constitution because it unambiguously permitted the state to attach social security benefits that § 407(a) unambiguously said were not attachable. *See id.* at 397.

Later, *Keffeler* specifically addressed § 407(a)'s phrase "other legal process."  In *Keffeler*, the state of Washington, through its Department of Social and Health Services, operated a foster care program for certain children who did not have acceptable guardians. 537 U.S. at 377.  Some of those children received SSI benefits under Title XVI of the Social Security Act, and the department received those payments as the child's "representative payee," in accordance with social security regulations. *Id.* at 378.  To offset the public cost of foster care, the department implemented a regulation providing that a child's social security benefits could be used to "'help pay for the cost of the foster care received.'" *Id.* at 378 (quoting Wash. Admin. Code § 388-70-069(1) (repealed 2001)).  Reimbursement to the department occurred only if the monthly accounting of a child's trust fund, set up to receive deposits of social security benefits, had a positive account balance after payment of the child's expenses, although usually the individual account was depleted. *Id.* at 378.

The affected foster care children brought a class action, alleging "that the department's use of their Social Security benefits to reimburse itself for the costs of foster care violated 42 U.S.C. §§ 407(a) and 1383(d)(1)." *Id.* at 379.  The issue boiled down to whether the department's use of the foster children's social security benefits, when it acts as

a representative payee, involves "other legal process" within the meaning of § 407(a).  *Id.*

at 382-83.  The Supreme Court answered, "No."

The Supreme Court recognized that "in the abstract the department does use legal

process as the avenue to reimbursement:  by a federal legal process the Commissioner

appoints the department a representative payee, and by a state legal process the department

makes claims against the accounts kept by the state treasurer."  *Id.* at 384.  But, it opined that

"other legal process" could not be read in "abstract breadth," but rather had to be read "far

more restrictively" to encompass only activities "similar in nature" to "execution levy,

attachment and garnishment."  *Id.* at 385.  The Supreme Court clarified that the phrase "other

legal process," as used in § 407(a),

> should be understood to be process much like the processes of execution, levy,
> attachment, and garnishment, and at a minimum, would seem to require
> utilization of some judicial or quasi-judicial mechanism, though not
> necessarily an elaborate one, by which control over property passes from one
> person to another in order to discharge or secure discharge of an allegedly
> existing or anticipated liability.

*Id.* at 385; *see also id.* (observing that written legal guidance provided by the Social Security

Administration similarly defined "legal process" as "the means by which a court (or agency

or official authorized by law) compels compliance with its demand; generally, it is a court

order." (citation and internal quotation marks omitted)).  Against that backdrop, the Court

held that the department's role as representative payee of the benefits owed children under

its care, while a "legal process," did not amount to "utilization of some judicial or

20

quasi-judicial mechanism . . . by which control over property passes from one person to another in order to discharge" a debt. *Id.*

The *Keffeler* Court distinguished *Philpott* and *Bennett*: "[B]oth *Philpott* and *Bennett* involved judicial actions in which a State sought to attach a beneficiary's Social Security benefits as reimbursement for the costs of the beneficiary's care and maintenance." *Id.* at 388. In *Philpott*, the respondent "'sued to reach the bank account.'" *Keffeler*, 537 U.S. at 388 (quoting *Philpott*, 409 U.S. at 591). In *Bennett*, the state "'filed separate actions in state court seeking to attach Social Security benefits.'" *Keffeler*, 537 U.S. at 388 (quoting *Bennett*, 485 U.S. at 396). In those cases, "the plain language of § 407(a) barred the State's legal action . . . ." *Id.* "Unlike the present case, . . . both *Philpott* and *Bennett* involved forms of legal process expressly prohibited by § 407(a). In neither case was the State acting as a representative payee in seeking to use the funds as reimbursement for the costs incurred in providing for the beneficiary's care and maintenance." *Id.* at 388-89.

### b.    § 1983 Supervisor Liability – Generally

Mr. Chambliss contends that Defendants violated § 407(a) based upon their alleged participation in the initiation and five-year prosecution of the contempt proceedings and/or their alleged failure to supervise those proceedings. He alleges that all Defendants, except Ms. Armour, had supervisory authority and are liable under § 1983 in that capacity. As to supervisory liability, "'[i]t is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior.'" *Keating v.*

*City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)).  "However, supervisors are liable under § 1983 'either when the supervisor personally participates in the alleged [federal statutory] violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'"  *Id.* (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)).  "A causal connection can be established by, *inter alia*, 'facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  *Id.* (quoting *Gonzalez*, 325 F.3d at 1235).  A causal connection also may be found where a supervisor's improper "'custom or policy result[s] in deliberate indifference to [federal statutory] rights.'"  *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)).

With these principles in mind, the court turns to whether the evidence taken in the light most favorable to Mr. Chambliss establishes a violation of § 407(a), and if so, whether that right was clearly established.  The analysis is divided into two subsections: (1) the initiation of the Contempt Proceedings; and (2) the five-year continuation of the contempt proceedings.

### c.      Initiation of Contempt Proceedings

Mr. Chambliss alleges that Defendants initiated state legal proceedings against him to collect his only source of income, SSI benefits, and that, therefore, his SSI benefits were

subjected to "other legal process," as prohibited by § 407(a).  Defendants contend that there is no evidence that they violated § 407(a).  Ms. Buckner, Ms. Hanks, Ms. Wallace and Ms. Justice attest that they had "no knowledge" that Mr. Chambliss's "only source of income [was] Supplemental Security Insurance benefits" (Buckner Aff. 1-2; Hanks Aff. 1-2; Wallace Aff. 4-5; Justice Aff. 2), and point out that, under ADHR's written procedures, referral of a child support case for a contempt action does not require that an alleged contemnor's income source be "verified."  (Wallace Aff. 3)  Furthermore, Ms. Armour and Ms. Floyd attest that they did not "use[] the state legal process to circumvent and usurp the Congress' SSI exemption."  (Armour Aff. 3; Floyd Aff. 3.) For the reasons to follow, the evidence fails to establish a violation of § 407(a) or to connect any Defendant to the initiation of the contempt proceedings.

There is no language in the Contempt Petition that refers to or even alludes to SSI benefits.  The Contempt Petition does not request that any SSI benefits received by Mr. Chambliss be used to pay his child support arrearage or that an income withholding order be entered to seize SSI benefits.  It does not specify any source from which the child support arrearage should be paid.  The Contempt Petition also does not request attachment of SSI benefits or that SSI benefits be assigned or transferred to the ADHR for payment of back child support.  While the Contempt Petition asks the state district court to enter an income withholding order, there is no request that an income withholding order be issued to a specified entity, much less to the Social Security Administration to garnish SSI benefits. In

23

short, there is nothing on the face of the Contempt Petition indicating that SSI benefits are being subjected to the legal contempt process, in violation of § 407(a). The facts of this case are distinguishable, for example, from *Bennett* because there, the state of Arkansas filed lawsuits expressly seeking to attach a beneficiary's Social Security benefits. *See* 108 U.S. at 396.

It is true that the Contempt Petition did summon Mr. Chambliss to the Tallapoosa County District Court for a show cause hearing. This court recently examined a similar contempt petition filed against another individual in the Tallapoosa County District Court for failure to pay court-ordered child support. *See Burns v. Buckner*, No. 3:09cv858-WKW, 2010 WL 1994927 (M.D. Ala. May 18, 2010).[13] *Burns* is instructive. In that case, the plaintiff sued Commissioner Buckner and Director Hanks, alleging as in this case that they violated § 407(a) by subjecting him to a contempt petition for failure to pay court-ordered child support, notwithstanding his assertion that his sole source of income was SSI benefits. *Id.* at *1-2. The reasoning in *Burns* applies equally here: "[N]othing in § 407(a) exempts [Mr. Chambliss] from the obligation to attend state court hearings." *Id.* at *6. "An order to *attend* a proceeding is not equivalent to an order requiring [Mr. Chambliss] to pay his child support obligations out of his SSI benefits, and, accordingly, does not constitute a 'judicial mechanism' 'by which control over property [*i.e.*, SSI benefits] passes from one person to another' in satisfaction of an unpaid debt." *Id.* (quoting *Keffeler*, 537 U.S. at 385). Stated

---

[13] It is presumed that Mr. Chambliss's counsel is familiar with this case, as he also represented the plaintiff in *Burns*.

another way, Mr. Chambliss cites no authority that he can violate a court order requiring him to pay child support and then circumvent a hearing before the court that issued the order merely by invoking § 407(a).

Notwithstanding the fact that the Contempt Petition did not request relief prohibited by § 407(a), Mr. Chambliss argues that the initiation of the contempt proceedings violated § 407(a) because Defendants knew or should have known that SSI benefits were his sole source of income. This allegation focuses on Defendants' knowledge and/or duty of inquiry prior to filing the Contempt Petition. There is no evidence that, prior to the filing of the Contempt Petition, any Defendant had knowledge that Mr. Chambliss received SSI benefits. Mr. Chambliss asserts, however, that he could prove Defendants' actual or constructive knowledge of his income source if he had access to ADHR's state-of-the-art computer system, the Alabama Location Enforcement Collection System. In a prior Order entered by this court, that request was held in abeyance, until such time that the immunity issues raised in the summary judgment motions were resolved. (*See* Order (withholding ruling on Mr. Chambliss's motion to compel and granting Defendants' motion to stay further discovery (Doc. # 42).)

Mr. Chambliss nevertheless fails to demonstrate that information pertaining to Defendants' knowledge of the source of his income would be material to the qualified immunity inquiry. Even if it is assumed that Defendants made no or insufficient inquiry as to the sources of Mr. Chambliss's income prior to bringing the contempt action and that

sufficient inquiry would have put them on notice that SSI benefits were his sole source of income, such assumptions do not change the qualified immunity analysis.  With those assumptions in play, Mr. Chambliss at best could present perhaps a case that Defendants had violated the contempt action referral policy set out in ADHR's Child Support Policy and Procedures Manual.  Whether a Defendant violated ADHR's policy is not the controlling issue in this § 1983 action.  Mr. Chambliss makes no showing that a violation of the ADHR's internal policy is tantamount to a violation of § 407(a).  *See Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005) ("[W]e have made it clear that a violation of state law is not tantamount to a violation of a federal right.").  More specifically, § 407(a) does not prescribe a method of income verification prior to bringing a state court contempt proceeding for failure to pay court-ordered child support.  It also does not forbid a government official from bringing a contempt petition against an individual who receives SSI benefits.  Nor does the statute speak to an alleged violator's state of mind or motivation.  Rather, § 407(a) is concerned solely with whether the SSI benefits themselves are "subject to . . . other legal process."  As discussed above, the Contempt Petition, which was generated by the ADHR's referral, did not seek payment of child support arrears from Mr. Chambliss's SSI benefits.  In sum, there is no evidence that the referral of Mr. Chambliss's case for a contempt action or the initiation of the contempt proceedings violated § 407(a).

Given this finding, it is unnecessary to elaborate upon other hurdles that Mr. Chambliss fails to clear.  They warrant brief mention, however.  First, Mr. Chambliss submits

no evidence that any Defendant personally participated in the process resulting in the referral of his case for contempt action; therefore, there is an absence of evidence connecting any Defendant with any act made in furtherance of the referral process. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").  For example, while it is undisputed that Ms. Armour was Mr. Chambliss's case worker, there is no evidence that she performed any act relevant to the referral process in his case.  Second, Mr. Chambliss presents no evidence addressing whether, when the Contempt Petition was filed in May 2005, he was unemployed and receiving SSI benefits, or whether he was receiving SSI benefits as his sole source of income or as a supplement.  The records Mr. Chambliss submits from the Social Security Administration confirm his receipt of benefits in 2006 and later years; there are no records for 2005.  Moreover, Mr. Chambliss's own affidavit, filed in February 2010, is phrased only in the present tense.  (Pl. Aff. ¶ 3 (attesting that he is "*currently* disabled and receive[s] SSI benefits as [his] only source of income" (emphasis added)).)[14]  Notably then, Mr. Chambliss submits no evidence of the underlying fact of which he says Defendants clearly knew or should have known – that his only source of income came from his SSI benefits.

---

[14] The affidavit Mr. Chambliss submitted with his Complaint fares no better.  While he attests that he repeatedly notified Tallapoosa County DHR employees that he was "disabled" and that his "only source of income" was SSI benefits, the affidavit does not say either when he provided this information to Tallapoosa County DHR employees or to whom he provided the information.  (Pl. Aff. ¶ 3 (Attach. to Compl. (Doc. # 1)).)  In short, the affidavit contains no facts implicating any Defendant named in this action.

Finally, Mr. Chambliss argues that all Defendants, except Ms. Armour, are liable in a supervisory capacity for the initiation of the Contempt Petition on theories of failure to train and failure to supervise, and for implementing a custom or policy that allegedly caused the filing of a Contempt Petition in his case. Because there is no underlying federal statutory violation arising from the initiation of the Contempt Petition, the claims of supervisory liability arising from that action must fail. *See Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008) ("There can be no supervisory liability . . . if there was no underlying constitutional violation . . . .").

### c.   Five-Year Prosecution of Contempt Proceedings

Mr. Chambliss also contends that Defendants violated § 407(a) by participating in the state district court proceedings and/or by failing to supervise those assigned to participate in the proceedings. This part of his claim focuses on the continuation of the contempt proceedings after Mr. Chambliss says Defendants learned that SSI benefits were his sole source of income. Defendants contend that there can be no violation of § 407(a) because there is no evidence that they administratively issued an income withholding order or that the state district court entered an order in the nature of a garnishment *at their request*. (Summ. J. Br. 24 (Doc. # 29); Summ. J. Br. 36 (Doc. # 38).) Mr. Chambliss argues that the evidence, which consists principally of his deposition testimony, creates genuine issues of material fact that defeat qualified immunity. An examination of this evidence, however, proves otherwise.

28

The following discussion focuses on Mr. Chambliss's arguments that Ms. Armour and Ms. Floyd violated § 407(a) by their participation in the contempt proceedings. Mr. Chambliss points to his deposition testimony that, when he appeared for child support court, Ms. Floyd accepted cash payments from him, notwithstanding that he told both her and Ms. Armour that "SSI was [his] only source of income." (Pl. Dep. 7-10, 81-83.) He also emphasizes that Ms. Armour told him that she believed it was "okay" for him to pay his child support with his SSI money. (Pl. Dep. 91.) It is undisputed that Ms. Armour and Ms. Floyd were participants in child support court by virtue of their positions with ADHR, and it is assumed as true that Mr. Chambliss used his SSI benefits to pay his court-ordered child support. To be sure, Mr. Chambliss's payments to Ms. Floyd allowed him to avoid appearing before the state district judge for a hearing on contempt. Mr. Chambliss points to no evidence, however, that he made these payments to Ms. Floyd pursuant to any directive issued by her that he make these payments with his SSI benefits.

Mr. Chambliss argues, however, that Ms. Floyd's acceptance of his cash payments involved coercive practices because Ms. Floyd witnessed the deputy district attorney, Ms. Martin, tell him that he would have to pay his child support with his SSI benefits or "go to jail." (Pl. Dep. 98-99.) Without condoning this alleged tactic by Ms. Martin, the court merely observes that Ms. Martin is not a defendant, and that Mr. Chambliss's attempt to implicate Ms. Floyd and Ms. Armour, through a conspiracy with Ms. Martin, was raised for the first time in his summary judgment response. (Pl. Summ. J. Resp. 21-22, 27, 43); *see*

29

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Because there is no claim of a conspiracy in the Amended Complaint, the conspiracy theory is not properly before the court.

Likewise, on this record, Mr. Chambliss also fails to raise a genuine issue of material fact that Ms. Armour's belief, even if misinformed, is the equivalent of a court order or similar judicial mechanism requiring him to pay his child support with SSI benefits.  Rather, as discussed in *Burns*, Mr. Chambliss points to no evidence that would have precluded him from foregoing payment to Ms. Floyd and attending the hearing before the state district judge.  As in *Burns*, Mr. Chambliss has not demonstrated that he was prevented from informing the state district judge of his financial situation and making his arguments to the state district court.  *See Burns*, 2010 WL 1994927, at *6.

On at least three occasions, Mr. Chambliss appeared before the state district judge. In his summary judgment response, Mr. Chambliss argues that Ms. Armour "resorted to directly requesting the state district judge [to] order [Mr. Chambliss] to pay child support with his SSI monies." (Pl. Summ. J. Resp. 43.)  He points to no evidence, however, and the court's independent review reveals none, to support this contention.  Rather, at these hearings, according to Mr. Chambliss's own testimony, Ms. Armour conveyed the very information to the state district judge that Mr. Chambliss had relayed to her – *i.e.*, that he received SSI benefits and had documentation to substantiate his receipt. (Pl. Dep. 83-84,

87-88, 99.) Mr. Chambliss does not contend that Ms. Armour's testimony in this particular regard was improper or violated § 407(a), but he suggests that what she did not say seals her liability. Specifically, he faults Ms. Armour for failing to testify that it was illegal for the state district judge to order Mr. Chambliss to pay child support with SSI benefits. (*See, e.g.*, Pl. Dep. 83, 91.) But, absent Mr. Chambliss's citation to any authority, the court is hard pressed to find that a witness's failure to provide legal advice to a state district judge during a hearing is the equivalent of a witness using legal process to reach SSI benefits, particularly when the evidence establishes that the witness testified to the pertinent facts. (*See generally* Armour Aff. 1 (attesting that her court appearances in child support cases are "in the capacity of a witness").) In short, there is no evidence that impugns Ms. Armour's conduct at the hearings.

There also are allegations, but absolutely no evidence, that Ms. Armour and Ms. Floyd scheduled case status reviews and compliance hearings to correspond with the dates of disbursement of his SSI benefits. (Pl. Summ. J. Resp. 43-44; Am. Compl. ¶¶ 8-9.) In other words, there is no evidence that contradicts Defendants' evidence that monthly child support hearings are scheduled by the state district judge in advance for the calendar year. (Hanks Aff. 2; Armour Aff. 2.) The court recognizes that Mr. Chambliss believes that Ms. Armour and Ms. Floyd had "full power" to exercise substantial control over the state district judge's rulings (Pl. Dep. 97, 98), but that belief rests on nothing more than speculation. "Inferences based upon speculation are not reasonable, and may not defeat a motion for summary

judgment." *Solliday v. Federal Officers*, No. 10-11854, 2011 WL 414283, at *1 (11th Cir. Feb. 9, 2011) (citation and internal quotation marks omitted).

Finally, Mr. Chambliss points out that on one occasion the state district judge handcuffed him until his mother brought money to pay his child support. (Pl. Dep. 11, 14, 92.) Even if true, the propriety of the tactic which Mr. Chambliss says the state district judge used to compel payment of his child support obligation (*i.e.*, handcuffing him until his mother brought payment) is not at issue. Mr. Chambliss submits no evidence from which it can be established or inferred that Ms. Floyd's action or Ms. Armour's action was the impetus behind the handcuffing. In any event, on that occasion, Mr. Chambliss's SSI benefits did not pass from him to the state district judge (or ADHR) to discharge his child support obligations. *See Keffeler*, 537 U.S at 385. To the contrary, Mr. Chambliss's mother paid his child support; he did not. On this record, there simply is no evidence that either Ms. Floyd or Ms. Armour violated § 407(a).

The discussion heretofore has focused on Ms. Armour's and Ms. Floyd's personal participation in the contempt proceedings. There is no evidence that the other Defendants – Ms. Buckner, Ms. Hanks, Ms. Wallace and Ms. Justice – had any personal involvement in or appeared at any of the contempt proceedings. In other words, Mr. Chambliss does not refute these Defendants' attestations that they had "no knowledge" at all of his case. (Buckner Aff. 1-2; Hanks Aff. 1-2; Wallace Aff. 4-5; Justice Aff. 2.) Indeed, Mr. Chambliss filed no response at all to Ms. Buckner's and Ms. Hanks' summary judgment motion. To the

extent that Mr. Chambliss seeks to hold any Defendant liable on a § 1983 supervisory theory, that theory fails for the same reasons previously enunciated.  There can be no supervisory liability if there is no underlying federal statutory violation.  *See Gish*, 516 F.3d at 955.

### 3.   *Violation of a Clearly Established Statutory Right*

Because Mr. Chambliss fails to raise a genuine issue of material fact that Defendants violated § 407(a) in the initiation and continuation of the contempt proceedings, it need not be determined whether the asserted right was clearly established.  However, even if the evidence demonstrated a violation of § 407(a), for qualified immunity purposes, it was not clearly established at the time Mr. Chambliss was subject to a Contempt Petition in Tallapoosa County District Court for failure to pay child support that any Defendant violated a clearly established federal statutory right.  Mr. Chambliss cannot defeat qualified immunity by pointing to cases establishing the general principle, articulated in § 407(a), that SSI benefits are not subject to "other legal process."  Rather, the inquiry focuses on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation [the defendant officer] confronted."  *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (citation and internal quotation marks omitted).  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ."  *Id.* (quoting *Saucier*, 533 U.S. at 201).

Neither *Philpott*, *Bennett* nor *Keffeler*, the Supreme Court decisions discussed earlier in this opinion, clearly establishes that a contempt petition requesting a non-custodial

parent's appearance for a hearing to show cause why he has failed to pay child support –

without any request that SSI benefits be attached or otherwise applied for payment of the

arrearage – violates § 407(a).  Mr. Chambliss also cites no law clearly establishing that a state

human resources worker who merely collects child support payments and accepts a cash

payment from a contemnor, who represents that the cash is the proceeds of SSI benefits,

subjects those SSI benefits to "other legal process."  Finally, Mr. Chambliss obviously cannot

show that a state human resources worker who merely testifies in a court proceeding of the

fact that the contemnor receives SSI benefits – without any request that those SSI benefits

be used to pay child support arrearage – violates clearly established law.  There simply is no

evidentiary basis[15] on which to conclude that any Defendant violated clearly established law

in her participation in the contempt proceedings at issue.  It necessarily follows that Mr.

Chambliss cannot demonstrate that it was clearly established that any Defendant is liable

under § 407(a) on a supervisory theory for the conduct of the participants.

## V.  CONCLUSION

Based upon the evidence viewed in the light most favorable to Mr. Chambliss, Mr.

Chambliss fails to show that any Defendant violated § 407(a) or, alternatively, that any

violation involves a clearly established federal statutory right.  Defendants are, therefore,

---

[15] Lack of evidentiary basis is a repetitive theme of this opinion.  Were there sufficient evidence to support the allegation of coercive conduct on the part of ADHR, independent of or in collusion with the district attorney's office, the court would not flinch in enforcing the prohibition of § 407(a), assuming that Mr. Chambliss has an individually enforceable right.  Upon close examination of the record, flinch it must in this case.

entitled to qualified immunity on Mr. Chambliss's § 1983 claims brought against them in their individual capacities for money damages for violations of § 407(a).  Accordingly, it is ORDERED that Defendants' motions for summary judgment (Docs. # 28, 37) are GRANTED.

An appropriate judgment will be entered.

DONE this 29th day of March, 2011.

/s/ W.  Keith Watkins
UNITED STATES DISTRICT JUDGE